**SO ORDERED.**

**SIGNED this 21 day of January, 2016.**

                                              **Stephani W. Humrickhouse**
                                              **United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

DIANNA LYN-MICHELE BORGUS,                    CASE NO. 12-02524-8-SWH

        DEBTOR                                                         CHAPTER 7

_____

DRIFTWOOD MANOR OWNERS
ASSOCIATION,

        PLAINTIFF
    v.                                                                         ADVERSARY PROCEEDING
                                                                               NO. 14-00201-8-SWH
DIANNA LYN-MICHELE BORGUS,

        DEFENDANT

**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**

The matters before the court are cross motions for summary judgment in the adversary proceeding between Driftwood Manor Owners Association and the debtor, Dianna Lyn-Michele Borgus. A hearing was held in Raleigh, North Carolina, on September 22, 2015. At the conclusion of the hearing, the court took the matter under advisement, pending supplemental briefing by the parties. The matter is now ripe for disposition.

1

## BACKGROUND

Dianna Lyn-Michele Borgus (the "debtor") is the owner of a condominium unit located at 1008-E Sandlin Place, Raleigh, North Carolina, 27606 (the "Property"). The debtor acquired the Property by general warranty deed, and took subject to the recorded declaration by the Driftwood Manor Owners Association (the "plaintiff") which required her to pay homeowners fees and assessments, late fees, interest, and other charges.

The debtor filed a voluntary chapter 13 petition on April 2, 2012. According to the plaintiff's proof of claim, filed on April 20, 2012, the debtor owed plaintiff the total sum of $5,108.00 on the petition date for pre-petition assessments. The plaintiff claims to be secured by the Property. Post-petition, the debtor has allegedly failed to pay assessments in the following amounts: (1) $182.94 per month from May 1, 2012 through December 31, 2012, amounting to $1,463.53; (2) $192.08 per month for the entirety of 2013, amounting to $2,304.96; and (3) $209.57 per month for January 1, 2014 through August 8, 2014, amounting to $1,676.56. On October 31, 2013, the plaintiff filed a claim of lien with respect to the debtor's unpaid post-petition obligations, and filed and served a Notice of Foreclosure Hearing. On June 25, 2014, a Foreclosure Order was entered, and the Property was noticed for sale on July 30, 2014. The debtor converted this case to one under chapter 7 on August 8, 2014, the last day before the end of the upset bid period provided for under N.C. Gen. Stat. § 45-21.27. The Notice of Conversion contained a statement indicating the debtor's intent to surrender the Property. On the conversion date, the debtor owed $12,630.61 in pre- and post-petition assessments, late fees, and foreclosure expenses. The post-petition, pre-conversion assessments, late fees and foreclosure expenses amount to $7,522.61.

On October 15, 2014, the plaintiff initiated the instant adversary proceeding, seeking the

entry of a judgment holding that the post-petition, pre-conversion assessments are nondischargeable administrative expenses under 11 U.S.C. § 503.[1] The plaintiff concedes that the pre-petition charges are subject to discharge. On December 17, 2014, the debtor filed her First Defense and Motion to Dismiss, in which she denied that the assessments fit within the definition of an administrative expense under § 503. On April 29, 2015, the plaintiff filed a Second Amended Complaint, which requested a determination of nondischargeability regarding the post-petition, pre-conversion debts based upon both § 503 and § 523(a)(16).

On July 16, 2015, the plaintiff filed its First Motion for Summary Judgment with respect to its claim under § 523(a)(16). The plaintiff maintains that the phrase "after the order for relief"[2] in § 523(a)(16) refers to the order for relief under the case as originally filed; that is, the petition date, rather than the conversion date. Accordingly, the plaintiff urges that post-petition, pre-conversion debts are rendered nondischargeable under § 523(a)(16). In support of its argument, the plaintiff cites Hijjawi v. Five North Wabash Condominium Ass'n, 495 B.R. 839, 849 (N.D. Ill. 2013), which held that the "order for relief" in § 523(a)(16) refers to the date of the initial order for relief, or the original petition date. The plaintiff contends that this interpretation comports with congressional intent in enacting § 523(a)(16), which was to "avoid the unfair burden on the other members of the [condominium] association which results from discharging the debtor's assessments." 140 Cong. Rec. S14750-01 (Oct. 7, 1994) (statement of Sen. Heflin); see also Hijjawi, 495 B.R. at 848.

---

[1] The plaintiff filed an Amended Complaint two days later, correcting the spelling of the debtor's name.

[2] Section 523(a) provides that a discharge under § 727 does not discharge an individual from any debt "for a fee or assessment that becomes due and payable after the order for relief to a membership association . . . ." § 523(a)(16).

3

Further, the plaintiff expresses concern that any other interpretation would enable debtors to manipulate the dischargeability of their debts by converting their cases to chapter 7 and conveniently relieving themselves of their obligations to owners associations. The plaintiff's motion for summary judgment also included a request for attorneys' fees and costs incurred in connection with this action.

In response, on August 6, 2015, the debtor filed her own Motion for Summary Judgment, raising two arguments. First, the debtor claims that the phrase, "after the order for relief," in § 523(a)(16), read in conjunction with § 348, refers to the conversion date rather than the petition date, and renders post-petition, pre-conversion debts dischargeable. This interpretation of the phrase "after the order for relief" would thus remove post-petition, pre-conversion homeowners association debts from the § 523(a)(16) exception. The debtor bases this interpretation on the interplay of §§ 348, 523(a)(16) and 727, which she argues work together to provide that pre-conversion debt is eligible for discharge in a case converted from chapter 13 to chapter 7. The debtor urges that its reading comports with the policies underlying the Code by providing relief for honest debtors that make good faith attempts to manage their debts. See Rosenfeld v. River Place East Housing Corp. (In re Rosenfeld), 23 F.3d 833 (4th Cir. 1994). The debtor maintains that she made an honest attempt to reorganize under chapter 13 before realizing that she was not financially able to complete her plan. Further, the debtor criticizes the Hijjawi case for allegedly ignoring the impact of § 348(b) on the remainder of the Code's dischargeability provisions.

Second, the debtor contends that the plaintiff's claim is time-barred because the deadline to challenge the dischargeability of debts was November 17, 2014, and the Second Amended Complaint, which first raised the § 523(a)(16) argument, was not filed until April 29, 2015. The debtor argues that the plaintiff's Second Amended Complaint does not relate back to the original

4

Complaint filed on October 15, 2014 because the issue of § 523(a)(16) dischargeability is not part of the same transaction or occurrence supporting the original Complaint. According to the debtor, the § 523(a)(16) issue implicates a new set of facts – the debtor's retention of the Property from the petition date to the conversion date – and thus should not relate back to the date of the original Complaint, which only recited a claim under § 503.

The plaintiff replied to the debtor's motion on August 26, 2015, accusing the debtor of trying to manipulate the dischargeability of the debt through a deceptively-timed, calculated conversion of her case to chapter 7 on the last day before the expiration of the upset bid period. The plaintiff argues that this maneuver gave the debtor more time to wrongfully keep her home while failing to fulfill her obligations to the plaintiff. The plaintiff further denies that its claim is time-barred and asserts that the Second Amended Complaint indeed relates back to the original pleading because the only difference between the Second Amended Complaint and the original Complaint is the addition of the alternative nondischargeability claim under § 523(a)(16), and further, that the alternative claim arises out of the same conduct, transaction, or occurrence set out in the original pleading.

On September 22, 2015, a hearing was held on the parties' cross motions for summary judgment. At the conclusion of the hearing, the court requested supplemental briefing on the following issues: (1) whether the plaintiff's Second Amended Complaint is time-barred for failing to relate back to the original filing, and (2) whether the obligations the debtor incurred between the petition date and conversion date constitute dischargeable pre-petition debt that falls outside of § 523(a)(16). In particular, the court asked counsel to research the legislative history of § 523(a)(16) for guidance on the issue of whether the statute was enacted to prevent the type of "conversion abuse" alleged by the plaintiff.

Following the hearing, both parties filed supplemental memoranda. The plaintiff asserts several arguments as to the timeliness of its claims. First, the plaintiff notes that the time limitations found in § 523(c) do not apply to the exception to discharge claimed under § 523(a)(16). Second, under Rule 4007, a complaint to determine dischargeability under any section other than §§ 523(a)(2), (4), or (6) can be brought at any time. Finally, the plaintiff asserts that even if there was a time limitation on bringing the instant claim for relief, the factual issues asserted in both the original Complaint and the Second Amended Complaint are identical and thus relation back would be appropriate.

With regard to the legislative history of § 523(a)(16), the plaintiff concedes that it could not find evidence in the legislative history supporting its position. The debtor's supplemental brief maintains that the legislative history shows that Congress was simply reconciling a split in authority over the dischargeability of post-petition assessments, and specifically, whether such assessments arose pre- or post-petition.

## DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment may be allowed "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).  In making this determination, all conflicts are resolved by viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  When ruling on a motion for summary judgment, the trial court has an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 323).

*1. Timeliness of Plaintiff's § 523(a)(16) Claim*

Before resolving the dischargeability question, the court must first address the timeliness of the plaintiff's alternative claim for relief under § 523(a)(16).  Section 523(a) does not establish a deadline for filing a dischargeability complaint.  However, Rule 4007 of the Federal Rules of Bankruptcy Procedure provides that a complaint to obtain a determination of dischargeability of any debt, *other than one brought under § 523(c)*, may be brought at any time.  Fed. R. Bankr. P. 4007(b). As § 523(c) applies only to the exceptions to discharge enumerated in §§ 523(a)(2), (4) and (6), there is simply no time limit for bringing a complaint under § 523(a)(16).  The plaintiff's claim under § 523(a)(16) is timely.[3]

---

[3]Even if the Code did provide a deadline for bringing a § 523(a)(16) complaint, the claim would still be timely because it would relate back to the time of the original Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15; Fed. R. Bankr. P. 7015. Under Rule 15, an amended pleading relates back to the original when the underlying facts pleaded in the amendment are part of the same transaction or occurrence of facts alleged in the original pleading.  Id.  Rule 15 allows liberal relation back of amendments so long as doing so does not create unfair surprise or prejudice to the opposing party.  KBHS Broad. Co., Inc. v. Sanders (In re Bozeman), 226 B.R. 627, 630 (B.A.P. 8th Cir. 1998); see also Re/Max Props., Inc. v. Barnes (In re Barnes), 96 B.R. 833, 837 (N.D. Ill. 1989) ("[t]he basic test of relation back is whether the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed.").  Courts have consistently held that

*2. Dischargeability of Post-Petition, Pre-Conversion Assessments under § 523(a)(16)*

Finding that plaintiff's claims are not time barred, the court next turns to a consideration of the dischargeability of the assessments that the debtor incurred between the petition date and the conversion date. The central issue is the meaning of the phrase "order for relief" under § 523(a)(16) where a case has been converted from chapter 13 to chapter 7. If the "order for relief" refers to the petition date, then post-petition, pre-conversion debts are not dischargeable under § 727 and are exposed to the § 523(a)(16) exception from discharge. If the date of the "order for relief" is the conversion date, the exception to discharge enumerated in § 523(a)(16) does not apply to post-petition, pre-conversion debts.

An analysis to determine the appropriate meaning for the words "order for relief" starts, and in this case,[4] ends with the words of the relevant statutes.

**Section 727(b)**

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the *order for*

---

dischargeability issues relate back. See Stephens v. Morrison (In re Morrison), 450 B.R. 734, 746 (Bankr. W.D. Tenn. 2011); SunTrust Bank, N.A. v. Korfonta (In re Korfonta), 417 B.R. 707, 711 (Bankr. E.D.Va. 2009); see also Matthyssen v. Richardson (In re Richardson), 520 B.R. 659, 666 (Bankr. W.D. Mich. 2014); Am. Honda Fin. Corp. v. Tester (In re Tester), 56 B.R 208, 210 (W.D. Va. 1985).
    Here, the underlying facts remain the same for both causes of action, and as such, the Second Amended Complaint arose from the same transaction or occurrence as the original filing. Further, for purposes of relation back, dischargeability under § 523(a)(16) is not a novel issue that would offend the purposes of the Rule 15 notice requirements; allowing it would not prejudice the debtor, and there is no evidence that the plaintiff acted in bad faith.

    [4]Although reference to legislative history is appropriate when there is an ambiguity in statutory language, see Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005); Athens Stove Works, Inc. v. Fleming (In re Boggs-Rice Co., Inc.), 66 F.2d 855, 858 (4th Cir. 1933), the court does not believe that there is an ambiguity. Regardless, the legislative history offers no guidance on the issue at bar.

8

>   *relief under this chapter* . . . .

§ 727(b) (emphasis added).

**Section 348(b)**

>   Unless the court for cause orders otherwise, in section[] . . . 727(b) . . . of this title, "*the order for relief under this chapter*" in a chapter to which a case has been converted under section . . . 1307 of this title means the conversion of such case to such chapter.

§ 348(b) (emphasis added).

**Section 523(a)(16)**

>   (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>   . . . .
>   (16) for a fee or assessment that becomes due and payable *after the order for relief* to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

§ 523(a)(16) (emphasis added).

Section 727 clearly states that a discharge in chapter 7 is a discharge of debts that arose prior to the order for relief under chapter 7. Just as clearly, § 348(b) states that, in a converted case, the order for relief referred to in § 727(b) is the date of the conversion. In this case, the order for relief under chapter 7 was entered on the date of the conversion of the case from chapter 13 to chapter 7. The inquiry would stop there, except that meaning must be given to the first phrase of § 727(b): "except as provided in section 523 of this title." Section 523(a)(16) excepts from discharge homeowners fees that became due after the "order for relief" – not the "order for relief *under this*

9

*chapter.*" Reading all three provisions together, although the discharge in a converted chapter 7 case would usually cover debts that arose prior to the conversion date, it only covers the debts that arose prior to the entry of the *original* order for relief – the petition date – where the exception to discharge is one under § 523(a)(16).[5] Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). Because statutory interpretation must flow from the understanding that Congress "says in a statute what it means and means in a statute what is says there," Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992)), the court must give effect to every clause and word of the pertinent statutory provisions, Duncan v. Walker, 533 U.S. 167, 174 (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1955)), and approach treatment of statutory terms as surplusage with reluctance, Babbitt v. Sweet Home Chapter of Cmtys. for a Great Ore., 515 U.S. 687, 698 (1995).

Interpretations of Similar Statutory Provisions

The court's interpretation of the plain language of the relevant sections is consistent with that of other courts that have had occasion to interpret the phrase, "order for relief," and in particular, the impact of conversion, in the context of other sections of the Code. One court that considered the application of § 348(b) in the context of § 523, albeit a different subsection than the one at issue, found that since § 348(b) does not specifically refer to § 523, it is not applicable. Cross v. United

---

[5]The court is further persuaded by the illogical effect of any other reading. Section 727(b) only contemplates the discharge of debts that arose *pre-conversion*. Interpreting § 523(a)(16) as excepting from discharge assessments arising *after* conversion would render the exception unnecessary.

States (In re Cross), 119 B.R. 652, 653 (W.D. Wis. 1990). Notwithstanding the application of § 348(b) to the § 727 discharge provisions, "its application is expressly excluded from the determination of exceptions to discharge by the first phrase of § 727(b)." Id. Therefore, although § 348(b) renders dischargeable debts that were incurred pre-conversion, it has no effect on debts that were nondischargeable in the pre-conversion case. Id.

This issue has also been the subject of multiple cases under § 546(a)(1)(A), which provides the statute of limitations for avoidance actions. Section 546(a)(1)(A) requires that avoidance actions be brought within two years of the "entry of the order for relief."[6] Naturally, in a converted case, this raises an issue as to whether "order for relief" refers to the petition date or the conversion date. Courts considering this question have found that the petition constitutes the order for relief under § 546(a)(1)(A), notwithstanding a subsequent conversion. Sheehan v. Klein (In re Mountaineer Bulk Servs., Inc.), Adv. Pro. No. 12-31, 2013 WL 620419, at *3 (Bankr. N.D.W. Va. Feb. 19, 2013); Wofford v. JPMorgan Chase Bank, N.A. (In re Wofford), Adv. Pro. No. 11-1167, 2012 WL 3070625, at *4 (Bankr. E.D. Tenn. July 30, 2012). This conclusion rests on the determination that § 348(b) does not alter the "order for relief" under § 546(a)(1)(A).

Section § 348(a) clearly provides that, except as specifically enumerated in §§ 348(b) and (c), conversion of a case does not effect a change in the petition date, the commencement of the case

---

[6]Specifically, § 546(a) provides that actions under §§ 544, 545, 547, 548 or 553 may not be commenced after the earlier of—
    (1) the later of—
        (A) 2 years after the entry of the order for relief; or
        (B) 1 year after the appointment or election of the first
    trustee . . . if such appointment or such election occurs before the
    expiration of the period specified in subparagraph (A); or
    (2) the time the case is closed or dismissed.

or the order for relief.  § 348(a); see also Mountaineer Bulk Servs., 2013 WL 620419, at *3; Murphy v. Wray (In re Wray), 258 B.R. 777, 781 (Bankr. D. Idaho 2001).  Accordingly, the general rule is that conversion does *not* reset the order for relief, except as specifically set forth in § 348(b).  Wray at 781 (citing Smith v. Kennedy (In re Smith), 235 F.3d 472, 477 (9th Cir. 2000)) ("conversion . . . constitutes an order for relief under the chapter to which the case is converted," but "does not reset the date of the order for relief.").  Otherwise interpreting § 348(b) as applying to § 546, despite its lack of inclusion, would "torture[] the plain language of this section."  Wray at 781.  Rather, the "plain reading" is that the "order for relief" does not mean the conversion date for purposes of § 546(a)(1)(A).  Id.  Explained further, subject to the narrow exceptions in § 348(b), "the date identified with the 'order for relief' from the original filing carries forward into the converted case, and that date is to be affixed to the phrase 'order for relief'" when it is used in provisions governing the converted case.  Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.), 222 B.R. 865, 868 (Bankr. D. Minn. 1998).

      The court finds the reasoning of these cases considering the impact of § 348(b) on other sections of the Code equally applicable to § 523(a)(16).  The court also notes that in light of the structure and language of the Code, it is most logical to interpret the "order for relief" in § 523(a)(16) as referring to the petition date.  The foregoing line of cases, and indeed, the structure of the Code, indicate that the Code's use of the phrase, "order for relief *under this chapter*" is reserved for the sections specifically enumerated in § 348(b).  On the other hand, "order for relief" refers to the petition date.

      Apparently only one other court has ruled on this issue, Hijjawi v. Five North Wabash Condominium Ass'n, 495 B.R. 839 (N.D. Ill. 2013).  The court in Hijjawi determined that the "order

for relief" in § 523(a)(16) denoted the petition date, not the conversion date. In that case, the pertinent discussion started off as follows: "[t]he substantive issue on appeal involves the interplay between 11 U.S.C. §§ 348(a) and (b), 523(a)(16), and 727(b)." Hijjawi at 845. Like the cases referenced above, the court initially cited § 348(a) for the general proposition that, except for the narrow circumstances in § 348(b), a conversion does not change the date of the order for relief. Id. The court found that, although § 348(b) provides that post-petition, pre-conversion debt is *eligible* for discharge, such debt is still subject to the exceptions in § 523, and further, that the phrase "order for relief" had a different meaning than the phrase "the order for relief *under this chapter*." Id. (emphasis added). Since § 523(a)(16) is omitted from the limited and enumerated list of sections provided in § 348(b) wherein "the order for relief under this chapter" means the conversion, the court concluded that the reference to "the order for relief" in § 523(a)(16) is the petition date, in accordance with § 348(a). Id. at 847.

In light of the foregoing, the court concludes that the "order for relief" in § 523(a)(16) means the petition date, not the conversion date. Accordingly, the post-petition, pre-conversion assessments and fees at issue are nondischargeable pursuant to § 523(a)(16), and summary judgment on this issue may be granted in the plaintiff's favor.[7]

---

[7]Since the court finds that the debt is nondischargeable under § 523(a)(16), it need not reach the dischargeability question under § 503(b). Furthermore, summary judgment arguments were not raised as to § 503(b). Nevertheless, the court would have quickly discarded with the plaintiff's claim for relief under this section, which seeks a determination that, pursuant to § 348(d), administrative expense claims under § 503(b) are nondischargeable. Regardless of whether the debt in question constitutes an administrative expense claim, courts have held many times over that § 348(d) simply relates to priority and has nothing to do with dischargeability. 4 Collier on Bankruptcy ¶ 348.05[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006); see also Fickling v. Flower, Medalie & Markowitz, Esqs. (In re Fickling), 361 F.3d 172, 175 (2d Cir. 2004) (proposed construction of § 348(d) would "create an unwarranted conflict" between §§ 348(d), 727(b) and 348(b)); Bank of La. v. Pavlovich (In re Pavlovich), 952 F.2d

*3. Claim for Attorneys' Fees under N.C. Gen. Stat. § 47C-3-116*

The plaintiff raised its claim for attorneys' fees in its motion for summary judgment, contending it is entitled to recover such fees by virtue of N.C. Gen. Stat. § 47C-3-116 and the recorded declaration. Post-hearing, on October 19, 2015, the plaintiff submitted a memorandum in support of its request for attorneys' fees, and specified that it was seeking fees in the amount of $1,684.50 in connection with the foreclosure action, and fees in the amount of $11,203.00 in connection with the instant dischargeability proceeding. The plaintiff contends it is entitled to attorneys' fees pursuant to Article 16.4 of the declaration, which provides that homeowners in default shall be liable for "all costs of collecting such assessments or installments and interest thereon, including reasonable attorney's fees, whether suit be brought or not." Plaintiff's Supplemental Memorandum – Attorney's Fees, Doc. No. 39 at 4. The debtor argues that, even if the declaration entitles the plaintiff to attorneys' fees, the present fee request is not reasonable.

Rule 54(d)(2) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by virtue of Rule 7054 of the Federal Rules of Bankruptcy Procedure, allows prevailing parties to recover attorneys' fees. Specifically, it provides that:

> (A) Claim to be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

---

113, 118 (5th Cir. 1992) ("Section 348(d) simply does not address the availability of remedies against discharge and dischargeability."); Hijjawi, 495 B.R. at 846 (widely recognized purpose of § 348(d) is to address priority status of pre-conversion administrative claims); In re Toms, 229 B.R. 646, 656 (Bankr. E.D. Penn. 1999) (pre-conversion priority administrative claims are dischargeable); White Front Feed & Seed v. State Nat'l Bank (In re Ramaker), 117 B.R. 959 (Bankr. N.D. Iowa 1990) (§ 348(d) does not provide exceptions to discharge; it deals with the priority treatment of claims).

>   (i) be filed no later than 14 days after the entry of judgment;
>   (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>   (iii) state the amount sought or provide a fair estimate of it; and
>   (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2); Fed. R. Bankr. P. 7054. Prior to the enactment of Bankruptcy Rule 7054, requests for attorneys' fees in adversary proceedings were governed by Bankruptcy Rule 7008(b), which required such requests to be pleaded in the complaint. Collier on Bankruptcy ¶ 7054.06[2]. Rule 7054 sets forth a standard more in line with the practice established by the Federal Rules of Civil Procedure. Id.; see also Fed. R. Bankr. P. 7054 advisory committee's note to 2014 amendment. Thus, the plaintiff's request for attorneys' fees was proper under Rule 54.[8] See Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., --- F. Supp. 3d —, 2015 WL 5123302 (E.D. Va. Aug. 28, 2015); see also Design Resources, Inc. v. Leather Indus. of Am., 2015 WL 8346599 (M.D.N.C. Dec. 8, 2015) (quoting Total Hockey). However, the court has broad discretion in awarding fees, and must consider the reasonableness of such an award. Herendeen v. Gen. Elec. Credit Union (In re Hibbard), Adv. Pro. No. 8:13-ap-00325-KRM, 2015 WL 7251535, at *1 (Bankr. M.D. Fla. Nov. 13, 2015).

In conducting the reasonableness inquiry, the court is guided by the twelve factors enumerated in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), which the Fourth Circuit adopted from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See In re

---

[8]The court notes that Rule 54 appears to require that requests for attorneys' fees follow a specific format – namely, that they be filed by motion, within 14 days after entry of judgment, specify the judgment and the grounds for relief and state the amount sought. Fed. R. Civ. P. 54(d)(2)(B); Fed. R. Bankr. P. 7054(b)(2); see also In re Hurtado, 2015 WL 6941127, at *3 (Bankr. E.D. Cal. Nov. 6, 2015). The court finds that the plaintiff's request, although not filed by separate motion and after entry of judgment, complies.

Steel Network, Inc., Case Nos. 09-81230, 09-81231, 2011 WL 4002206, at *5 (Bankr. M.D.N.C. June 27, 2011). The Johnson factors are as follows: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to properly perform the service; (4) preclusion of other employment due to acceptance of the case; (5) customary fees; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. (citing Johnson, 488 F.2d at 717-19).

      Upon review of the time entries submitted by the plaintiff, the court finds that the fee award should be reduced. In particular, the court finds that the fee request is excessive in light of instances of lumping, vague time entries, entries for ministerial tasks, and the amount involved and results obtained. The first Johnson factor, the time and labor required in the case, warrants a reduction in the fee award because of the multiple time entries for ministerial work, such as filing pleadings, forwarding e-mails to the client and scanning documents. Additionally, the record contains many lumped entries and entries with vague descriptions, such as "review file" or "[e]xchange of e-mails." Lumping is "universally disapproved" by bankruptcy courts. In re Staggie, 255 B.R. 48, 55 (Bankr. D. Idaho 2000) (quoting In re Automobile Warranty Corp., 138 B.R. 72, 76 (Bankr. D. Colo. 1991)) (internal quotations omitted). Vague time entries, whether due to lumping or nondescriptiveness, renders it impossible for the court to determine how much time was dedicated to the specific tasks involved. Accordingly, when presented when an inadequate record, adjustments to the fee award are appropriate. In re Green Valley Beer, 281 B.R. 253, 259 (Bankr. W.D. Penn. 2002).

      Further, the amount in dispute is only $7,522.61, yet the amount of attorneys' fees sought is

16

almost double this amount. The court cannot find any basis upon which to justify a fee award that is so much larger than the underlying debt. Accordingly, the eighth Johnson factor indicates that the fees sought are excessive and should be reduced. Based upon the foregoing, the court has determined that a fifty percent reduction is appropriate, and it will award fees in the amount of $6,443.75 to the plaintiff. The award of attorneys' fees is similarly excepted from discharge. "When a debt evidenced by a note or other contract allowing attorneys' fees and other costs of collection is determined nondischargeable, the attendant attorneys' fees and costs are similarly nondischargeable." Primm v. Foster (In re Foster), 38 B.R. 639, 642 (Bankr. M.D. Tenn. 1984) (allowing attorneys' fees in § 523 dischargeability action); see also In re Hijjawi, 471 B.R. 917, 926 (Bankr. N.D. Ill. 2012) (nondischargeable claim of homeowners association included attorneys' fees).

## CONCLUSION

In sum, the post-petition, pre-conversion debt owing by the debtor to the plaintiff for homeowners fees and assessments in the amount of $7,522.61, as well as reasonable attorneys' fees in the amount of $6,443.75, for a total of $13,966.36, is a nondischargeable debt pursuant to § 523(a)(16). Summary judgment is granted to the plaintiff on its claim for relief under § 523(a)(16).

**END OF DOCUMENT**